**SO ORDERED.**

**SIGNED this 8 day of July, 2013.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# RALEIGH DIVISION

IN RE:

VINCENT SCOTT ROGERS AND
CHARISSE ROGERS,                                    CASE NO. 08–008341–8–JRL
                                                    CHAPTER 13
    DEBTORS.

## ORDER

This matter came before the court on the motion of State Employees' Credit Union ("SECU") seeking a determination that the discharge granted to Vincent Scott Rogers and Charisse Rogers (collectively "debtors") had not extinguished their liability for a deficiency arising from a post–discharge default and foreclosure sale. A hearing was held on June 5, 2013, in Raleigh, North Carolina.[1]

On September 4, 2003, the debtors executed a promissory note in favor of SECU, in the

---

[1] Despite issuing a tentative ruling at the conclusion of the hearing, the court took the matter under advisement and afforded the parties the opportunity to submit supplemental material, including case law and argument, to be considered in rendering a final decision. In addition to the materials submitted by the debtors and John F. Logan, the chapter 13 trustee appointed to administer the debtors' case, William E. Brewer, Jr. of The Brewer Law Firm filed a memorandum in support of the debtors on June 24, 2013.

1

original principal amount of $259,200.00, which was secured by a deed of trust on their principal residence located at 18 LaFoy Drive, Clayton, North Carolina and more particularly described as "Lot 116, Glen Laurel Subdivision, Phase 4, as shown on map recorded in Plat Book 40, Page 379, Johnston County Registry" ("real property"). The deed of trust was recorded in Book 2547 at Page 713 in the Johnston County Register of Deeds on September 12, 2003.

On November 24, 2008, the debtors filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code. On January 8, 2009, SECU filed a proof of claim, Claim No. 4, in the amount of $236,453.82, all of which was secured by the real property ("proof of claim"). However, the proof of claim did not include a portion for any prepetition arrearages because the debtors, as of the petition date, were not in default. Both the debtors' schedules and the proof of claim list the fair market value of the real property as $340,000.00 and $288,000.00, respectively.[2]

The debtors' plan of reorganization, which was confirmed on May 22, 2009, provided for monthly payments of $99.00 for thirty–six months or until all required claims were paid in full. With respect to SECU's claim, in the amount of $236,453.82, both the debtor's proposed plan[3] and the version confirmed by the court required the debtor to remit postpetition payments directly to SECU in accordance with the previously executed promissory note and deed of trust.[4] After

---

[2] The real property was also encumbered by a junior deed of trust in favor of GMAC Mortgage, LLC ("GMAC"). On January 22, 2007, the debtors executed promissory note in the original principal amount of $110,500.00, which was secured by a deed of trust on the real property in favor of GMAC. The deed of trust, which was recorded in Book 3285, Page 932 of the Johnston County Register of Deeds on February 12, 2007, formed the basis for the proof of claim, Claim No. 1, filed by GMAC on December 10, 2008, in the amount of $108,320.60.

[3] The debtors proposed to retain the real property and make regular monthly payments directly to SECU, GMAC and the homeowners' association.

[4] The confirmed plan specifically provides, in pertinent part:

2

completing their plan, the debtors received their discharge on December 9, 2010 and the court entered a final decree on January 3, 2011.

After the receiving their discharge and as a result of their default under the terms of the promissory note, SECU commenced a foreclosure proceeding on the real property in the Johnston County Superior Court on June 13, 2011. After receiving authorization to proceed, a foreclosure sale was held on September 8, 2011 and the real property was sold to SECU for $177,336.00. Applying these proceeds to the outstanding balance owed, the debtors were potentially liable to SECU, under the terms of the promissory note, for a $61,586.87 deficiency. On August 3, 2012, SECU commenced a civil action against the debtors in the Johnston County Superior Court, seeking recovery of the $61,586.87 deficiency owed under the promissory note. Despite being duly served with copies of the summons and complaint, the debtors did not file an answer, contest or otherwise respond to the allegations therein. Due to their failure to answer or otherwise respond, a default judgment was entered in favor of SECU on September 13, 2012.

SECU filed the motion currently before the court on April 1, 2013, seeking a determination

---

With respect to claims for which the terms of repayment are listed as: "Direct" or "Outside" or similar language regarding the payment of a claim under this Plan, such language means that the Debtor(s) or a third party will make the post–petition payments in accordance with the contractual documents which govern the rights and responsibilities of the parties to the transaction, including any contractual modifications thereof, beginning with the first payment that comes due following the order for relief. With respect to claims for which the collateral is described as "Arrears," the amount thereby shown as pre–petition arrears shall be cured through plan payments made by the Debtor(s) in the manner set forth under the heading "Repayment." The lien of each such creditor shall survive the discharge(s) of the Debtor(s), provided that upon payment to the creditor of the allowed arrearage claim, shown below (or as changed by a timely field and allowed claim or amendment to claim or order of this Court), the Debtor(s) shall be deemed to be current under the terms of the debt as of the petition date.

3

that the debtors' discharge had not affected their personal liability for the $61,586.87 unsecured deficiency arising from the foreclosure sale. In support of its motion, SECU distinguishes this court's decision in In re Lane, No. 97–06850–8–JRL (Bankr. E.D.N.C. July 13, 2006), which held that the debtors' discharge extinguished any personal liability they had on a unsecured deficiency claim arising from a postpetition foreclosure sale of their personal residence pursuant to § 1328(a) of the Bankruptcy Code.[5] The debtors' response, filed on April 18, 2013, contends that their discharge relieved them of any personal liability for the deficiency. Specifically and relying on Lane, the debtors assert that the deficiency is not excepted from discharge pursuant to § 1328(a) and § 1322(b)(5). The debtors also argue that § 1322(b)(2) does not provide an exception to the discharge afforded to chapter 13 debtors under § 1328(a). According to the debtors, § 1328(a) does not list the types of claims referenced in § 1322(b)(2) as exceptions to discharge and, if Congress had intended to provide for such, it would have expressly stated as it did with § 1322(b)(5). Furthermore, utilizing § 1322(b)(2) to except the deficiency at issue from discharge, will call into question the dischargeability of all debts on real property classified as a debtor's principal residence at the time of confirmation and later surrendered.

## DISCUSSION

The issue before the court is whether the discharge granted to these debtors extinguished their liability for a deficiency arising from a post–discharge foreclosure sale of their principal residence by a secured creditor whose claim was paid directly outside the debtors' chapter 13 plan. Although esoteric, the issue of whether a discharge extinguishes liability on a deficiency that arises

---

[5]Hereinafter and unless otherwise indicated, all section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq.

from a claim paid directly outside a debtor's chapter 13 plan that has not been paid in full, permeates throughout chapter 13 cases.

Section 1328(a) "grant[s] the debtor a discharge of all debts provided for by the plan . . . except any debt . . . provided for under section 1325(b)(5)." 11 U.S.C. § 1328(a)(1). Analyzing the phrase "provided for by the plan" in § 1328(a), the Supreme Court clarified that "[t]he most natural reading of the phrase to 'provid[e] for by the plan' is to 'make a provision for' or 'stipulate to' something in the plan." Rake v. Wade, 508 U.S. 464, 473–74 (1993) (emphasizing that the phrase "provided for by the plan" in § 1328(a) "is commonly understood to mean that a plan 'makes a provision' for, 'deals with,' for even 'refers to' a claim." (citations omitted)). "As long as the plan contains some provision describing the treatment of that debt, and no exception to the chapter 13 discharge applies, the debt is discharged." Mayflower Capital Co. v. Huyck (In re Huyck), 252 B.R. 509, 514 (Bankr. D. Colo. 2000) (citation omitted). Absent an exception under 1328(a)(1)–(4), a claim "provided for by the plan" is discharged under § 1328(a) if the plan contains a provision for the remittance of monthly payments directly to the claimant outside the plan. See Rake, 508 U.S. at 473–74; Lane, No. 97–06850, at 3 (holding that "the debtors' plan . . . provided for the second mortgage debt by making a provision for direct payments to SECU outside the plan."); Keith M. Lundin, CHAPTER 13 BANKRUPTCY, 3D ED. § 349.1 (2000 & Supp. 2004) (stating that "a claim is provided for by a plan that specifies payments by the debtor directly to the creditor."). Pursuant to § 1328(a) and "upon completion of payments under the plan, the debtor is entitled to a discharge of all debts, including those paid directly to creditors." Lundin, CHAPTER 13 BANKRUPTCY, 3D ED. § 349.1.

Section 1322(b)(2), coined the "anti–modification" provision, provides that a "plan may .

. . modify the rights of holders of secured claims, other than a claim secured only by security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims . . . . 11 U.S.C. § 1322(b)(2); In re Litton, 330 F.3d 636, 643–44 (4th Cir. 2003) (emphasizing that "any fundamental alteration in a debtor's obligations, e.g., lowering monthly payments, converting a variable interest rate to a fixed interest rate, or extending the repayment term of a note[,]" constituted an impermissible modification under 1322(b)(2)). The Supreme Court, in Nobelman v. American Savings Bank, 508 U.S. 324, 326 (1993), held that § 1322(b)(2) prohibits a chapter 13 debtor from utilizing § 506 to modify or "strip down" an undersecured creditor's lien into secured and unsecured components where the collateral securing it is the debtor's principal residence. See, e.g., In re Kidd, 161 B.R. 769, 771 (Bankr. E.D.N.C. 1993) (holding, in the wake of Nobelman, that § 1322(b)(2) does not apply to a wholly unsecured junior lien on a debtor's principal residence); TD Bank, N.A. v. Davis (In re Davis), 716 F.3d 331, 335 (4th Circuit 2013) (holding "that section 506(a), which classifies valueless liens as unsecured claims, operates with section 1322(b)(2) to permit a bankruptcy court . . . to strip off a lien against a primary residence with no value."). The term "rights" in § 1322(b)(2) is not defined by the Bankruptcy Code; therefore, North Carolina law determines those rights that are not subject to modification. See Butner v. United States, 440 U.S. 48, 54–55 (1979). In addition to those defined by the promissory note and deed of trust, see Nobelman, 508 U.S. at 329 (indicating that a mortgagee's "rights" under a promissory note and deeds of trust "are reflected in the relevant mortgage instruments."), "[i]f the foreclosure sale of real property which secures a non–purchase money mortgage fails to yield the full amount of due debt, the mortgagee [or secured claimant] may sue for a deficiency judgment." Carolina Bank v. Chatham Station, Inc., 186 N.C. App. 424, 428,

6

651 S.E.2d 386, 389 (2007) (citation omitted).[6]

Pursuant to § 1322(b)(5) and notwithstanding § 1322(b)(2), a "plan may . . . provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due . . . ." 11 U.S.C. § 1322(b)(5); See, e.g., Lundin, CHAPTER 13 BANKRUPTCY, 3D ED. § 350.1 ("[T]he lien and any other contract or state law rights of a creditor with a claim provided for under § 1322(b)(5) are enforceable until the debtor completes performance consistent with the contract.").[7] The plan cannot provide for a "curing of any default" and the exception to discharge under § 1322(b)(5) is not implicated where there is no prepetition default or arrearages for debtors to cure. Lane, No. 97–06850, at 3 (citations omitted); 8 Collier on Bankruptcy ¶ 1328.02[3][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013) ("[A] debt is not nondischargeable under this subsection simply because it is a long–term debt that could be cured under section 1322(b)(5); it is nondischargeable only if cure is, in fact, provided for by the

---

[6]Deficiency judgments are "an 'imposition of personal liability on mortgagor for unpaid balance of mortgage debt after foreclosure has failed to yield full amount of due debt.'"Hyde v. Taylor, 70 N.C. App. 523, 526, 320 S.E.2d 904, 906 (1984) (citation omitted).  A purchase money mortgagee, the holder of a purchase money deed of trust, is limited by N.C. Gen. Stat. 45–21.38 to the recovery of the real property or the proceeds received from the sale of the real property.  See Blanton v. Sisk, 70 N.C. App. 70, 71, 318 S.E.2d 560, 562 (1984).  The deed of trust executed in favor of SECU in the instant case, however, was a non–purchase money deed of trust.

[7]Section §1322(b)(5), in its entirety, provides that

> the plan may . . . notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any ... secured claim on which the last payment is due after the date on which the final payment under the plan is due.

11 U.S.C. § 1322(b)(5).

7

plan.").

After further review, the court finds its previous decision in Lane decisive. In Lane, this court held that the debtors' personal liability for an unsecured deficiency claim, which arose as a result of postpetition foreclosure sale, was discharged pursuant to § 1328(a). No. 97–06850–8–JRL, at 5 (holding that "when the debtors received their discharge after the foreclosure of the subject property, the discharge extinguished any personal liability on [the] unsecured [deficiency] claim."). In reaching the conclusion that the unsecured deficiency claim was discharged, this court found § 1322(b)(5) inapplicable and the debtors did not violate the anti–modification provision in § 1322(b)(2). Id. The court held that § 1322(b)(5) did not except the unsecured deficiency from discharge because the debtors were not in default as of the petition date and, therefore, their confirmed plan did not contain a provision to cure any prepetition arrears or default. Id. at 3. With respect to 1322(b)(2), the court distinguished Nobelman on the basis that the undersecured creditor's rights were modified "by operation of state law when the subject property was foreclosed[]" and not by the debtors' chapter 13 plan. Id. at 4–5. Relying on Dewsnup v. Timm, 502 U.S. 410, 414 (1992) and Johnson v. Home State Bank, 501 U.S. 78, 84 (1991), the court concluded the undersecured creditor's lien, its mode of enforcing the claim in rem, was extinguished when the real property was sold at the foreclosure sale and their discharge relieved them of in personam liability for any resulting deficiency. Lane, No. 97–06850, at 5. The fact that the foreclosure sale was conducted and the unsecured deficiency claim arose before the debtors received their discharge was not crucial to the court's analysis. Id.

In accordance with the provisions of their confirmed plan, the debtors were required to make direct payments to SECU outside the plan. Analogous to Lane, § 1322(b)(5) does not except the

8

debt forming the basis of SECU's claim from discharge because the debtors' confirmed plan did not contain a provision to cure prepetition arrears or default. Moreover and consistent with §1322(b)(2), the debtors did not modify the "bundle of rights" held by SECU under the promissory note and deed of trust,[8] which included the right to recover any deficiency remaining after the foreclosure sale. See, e.g., Carolina Bank, 186 N.C. App. at 428, 651 S.E.2d at 389. SECU was left with a deficiency of $61,586.87 after it applied the proceeds of the foreclosure sale to the outstanding balance owed by the debtors. Although SECU was permitted to enforce its lien by foreclosing on the real property, see Johnson, 501 U.S. at 84; Dewsnup, 502 U.S. at 418 (emphasizing that a lien remains with a parcel of real property until foreclosure), the debtors' discharge released them from personal liability with respect to the deficiency by "voiding any past or future judgments on the debt . . . ." Tenn. Student Assistance Corp. v. Hood, 541 U.S. 440, 447 (2004) ("The discharge order releases a debtor from personal liability with respect to any discharged debt by voiding any past or future judgment on the debt and by operating as an injunction to prohibit creditors from attempting to collect or to recover the debt." (citations omitted)); Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez), 421 B.R. 356, 365 (Bankr. S.D. Tex. 2009) ("Upon the Court's grant of discharge order, the 'debtor is immune from personal liability on any discharged debt.'" (citations and footnote omitted)). The fact that the foreclosure sale was conducted and the deficiency claim arose subsequent to the debtors' receipt of their discharge is irrelevant. See In re Javarone, 181 B.R. 151,

---

[8]These rights, which were granted to SECU under the terms and provisions of the promissory note executed by the debtors and deed of trust encumbering the real property, include inter alia: (1) the right to repayment of principal and interest (at a specified adjustable rate) in monthly installments of $1,200.40 over a thirty–year period; (2) the right to retain its lien on the real property until the debt is satisfied; (3) the right to accelerate the amount due upon default and initiate foreclosure proceedings against the real property; and (4) the right to commence a separate action against the debtors to recover any deficiency remaining after a foreclosure sale.

155 (Bankr. N.D.N.Y. 1995) (emphasizing that a mortgage loan debt provided for by the plan, which is not cured pursuant to § 1322(b)(5) and is not satisfied prior to the completion of payments under the plan, would be discharged); Lundin, CHAPTER 13 BANKRUPTCY, 3D ED. § 349.1 ("Discharges are routinely entered in Chapter 13 cases without regard to whether the debtor has completed payments directly to creditors."). The discharge extinguished their personal liability with respect to any past, present or future judgment arising from SECU's claim, which was provided for under the debtors' plan and discharged pursuant to § 1328(a). See Hood, 541 U.S. at 447. Accordingly, the debtors' discharge left them immune from personal liability with respect to the debt owed to SECU, including the deficiency resulting from the foreclosure sale. See Johnson, 501 U.S. at 84 ("Rather, a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor in personam—while leaving intact another—namely, an action against the debtor in rem").

## CONCLUSION

Based on the foregoing, SECU's motion for a declaratory ruling is **DENIED** and the court finds that its unsecured deficiency claim of $61,586.87, was discharged in the debtors' case pursuant to § 1328(a) because their plan provided for SECU's claim and no exception to discharge applies.

**END OF DOCUMENT**